IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS CHAVEZ,<br><br>        Petitioner,<br><br> vs.<br><br>BEN CURRY,<br><br>        Respondent. | No. C 09-0353 LHK (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding *pro se*, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2007 decision by the California Board of Parole Hearings ("Board") finding him unsuitable for parole. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities and exhibits. Petitioner then filed a traverse. After the Court directed further briefing, Respondent filed a supplemental answer, and Petitioner filed a supplemental traverse. For the reasons set forth below, the petition for a writ of habeas corpus is DENIED.

**BACKGROUND**

> On the late evening hours of July 24th, 1982, Ronald Rivas, last name is R-I-V-A-S, age 20, a Marine on leave, Joaquin Lopez, L-O-P-E-Z, age 18, and Ralph Jimenez, J-I-M-E-N-E-Z, age 17, were standing in the front yard of 3338 Maceo Street. That is spelled M-A-C-E-O, next door to a baptismal

> celebration. The men were members or associated with the street gang known as 'Cypress Park' and the location was known to be gang territory. At about 10 p.m., a car driven by Mr. Chavez with crime partner Cantu as a passenger, drove by and stopped. Mr. Chavez had a shotgun and Mr. Cantu was armed with a rifle. A witness approached the car and Mr. Chavez pointed a handgun at him, several shots were fired by both Mr. Chavez and the crime partner at the victims in the street. Rivas was fatally shot and the cause of death was a gunshot wound to the head. The two other victims were wounded by gunfire. During the subsequent investigation, officers recovered five .22 caliber spent shell casings at the crime scene. Further investigation disclosed that the car used in the shooting was registered to Mr. Chavez. Following his arrest, Mr. Chavez identified his crime partner as Jesse Cantu, a fellow gang member of 'The Avenues.' Officers further recovered a .22 caliber barrel and stock at Mr. Chavez's residence. The gun barrel and remnants of the gun matched the casings fired at the crime scene.

(Petition, Ex. A, Transcript of 2007 Hearing ("Tr.") at 9-10.)

In 1994, Petitioner pleaded guilty to second degree murder with the use of a firearm, and was sentenced to 17-years to life. (Petition at 2.) Petitioner filed unsuccessful state habeas petitions in all three levels of state court, challenging the denial of his parole. Petitioner thereafter filed the instant petition.

**DISCUSSION**

A.   Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, that is, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim, and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006). Here, because no state court has given a reasoned explanation of its denial of Petitioner's state habeas petition, the Court independently reviews the record. *See id.* at 1198.

B.   July 24, 2007 Board Hearing

Petitioner had been incarcerated since June 22, 1984. (Tr. at 7.) The 2007 hearing was his ninth hearing. (Petition at 6a.) Petitioner's minimum parole eligibility date was March 7, 1993. (Tr. at 7.)

Petitioner's file indicated that he did not have any drug or alcohol dependency prior to the commitment offense. (*Id.* at 10.) Petitioner was in the tenth grade when he quit to go to juvenile camp for carrying a concealed weapon. (*Id.* at 13.) Petitioner had been involved with

The Avenues gang for approximately four years before he committed the life offense. (*Id.* at 10-11.)

Petitioner married his first wife in 1984 when he was 20 years old. (*Id.* at 11.) His marriage lasted only a few months. (*Id.*) At the time of the parole hearing. Petitioner had been married to his current wife for ten years. (*Id.*) He had two children from his first marriage, and two stepchildren, although he does not have much contact with any of them. (*Id.* at 11-12.) Petitioner also has four siblings and indicated that his wife visits him in prison every week. (*Id.* at 12.)

Regarding post-conviction factors, Petitioner had received completed certificates for auto mechanics, vocational welding, AWS, and SMAW prior to his previous parole hearing. (*Id.* at 16.) The Board acknowledged several other programs that Petitioner participated in which had been terminated by the prison. (*Id.* at 16-17.) Petitioner achieved his GED in 1995, and had worked at several places, including the Dental Lab and Wood Furnishing Finishing. (*Id.* at 17.) Petitioner received above average and exceptional ratings from his work supervisors. (*Id.* at 17-18.)

Petitioner had no record of participating in any self-help or therapy groups in 2005, 2006, or 2007. (*Id.* at 19.) Petitioner's last minor and major disciplinary report both occurred in 2000, and none of his prison violations involved forced violence or weapons. (*Id.* at 20.)

The most recent psychological evaluation for Petitioner was completed in 2007. The report concluded that Petitioner met the criteria for antisocial personality disorder. (*Id.* at 21.) He scored in the moderate range for future violence when using a historical insight. (*Id.* at 22.) Overall, Petitioner scored in the low range for psychopathy, moderately low for propensity for violence, and low range for general recidivism. (*Id.*) The evaluator noted that Petitioner showed good insight and remorse into his role in the crime. (*Id.* at 23-24.)

Petitioner's parole plans included either living with his wife in Paso Robles, or living with his mother and stepfather in Long Beach. (*Id.* at 24 .) Petitioner stated that if he lived with his mother, he would work in their coin operated carwash. (*Id.* at 24-25.) Petitioner stated that he would work at the carwash until he found something more suitable. (*Id.* at 25-26.) If he lived

1  with his wife, Petitioner noted that his wife made enough money to be able to support the both of
2  them until he could find a suitable job. (*Id.* at 25.)
3  　　　The district attorney opposed granting a parole date. Petitioner refused to answer most of
4  the district attorney's questions. (*Id.* at 32.)
5  　　　Ultimately, the Board denied parole. It was concerned that although Petitioner looked as
6  if he was programming in a positive manner in prison, a closer look revealed that Petitioner was
7  not making many improvements. (*Id.* at 48.) Beyond achieving his GED more than a decade
8  ago, the Board recognized that Petitioner had not progressed academically. (*Id.*) Petitioner had
9  also not been involved in any self-help since 2004. (*Id.* at 49.) While Petitioner worked in
10 Furniture and Dental, he made no effort to find a job outside of prison as part of his parole plans.
11 (*Id.* at 48.) The Board was concerned that Petitioner had one potential job, which was unrelated
12 to any marketable skill he had. (*Id.* at 48-49.) Finally, the Board intimated that because
13 Petitioner selectively decided which of the district attorney's questions he would and would not
14 answer -- even though they were unrelated to the commitment offense -- it was reasonable to
15 believe that Petitioner had something to hide. (*Id.* at 53.)
16 C.  Analysis
17 　　　The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the
18 absence of some evidence of his or her "current dangerousness." *Hayward v. Marshall*, 603 F.3d
19 546, 555, 561 (9th Cir. 2010) (en banc). Under California law, however, "some evidence" of
20 current dangerousness is required in order to deny parole. *Id.* at 562 (citing *In re Lawrence*, 44
21 Cal. 4th 1181, 1205-06 (2008) and *In re Shaputis*, 44 Cal. 4th 1241 (2008)). This requirement
22 gives California prisoners a liberty interest, protected by the federal constitutional guarantee of
23 due process, in release on parole in the absence of "some evidence" of current dangerousness.
24 *Cooke v. Solis*, 606 F.3d 1206, 1213-1214 (9th Cir. 2010).
25 　　　When a federal habeas court in this circuit is faced with a claim by a California prisoner
26 that his right to due process was violated because the denial of parole was not supported by
27 "some evidence," the court analyzes whether the state court decision reflects "an 'unreasonable
28 application'[] of the California 'some evidence' requirement, or was 'based on an unreasonable

determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); *see Cooke*, 606 F.3d at 1213. California's "some evidence" requirement was summarized in Hayward as follows:

> As a matter of California law, "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

*Hayward*, 603 F.3d at 562 (quoting *Lawrence*, 44 Cal. 4th. at 1191, 1210-14); *see Cooke*, 606 F.3d at 1213-1214 (describing California's "some evidence" requirement).

Here, there was "some evidence" supporting the Board's denial of parole. The life crime meets at least one of the regulations' criteria for determining that it was committed in an especially heinous, atrocious or cruel manner. According to the facts summarized at the hearing, one man was shot and killed and another two men were wounded by gunshots. (2007 Psychological Evaluation at 3.) Thus, multiple victims were attacked and injured. Cal. Code Regs., tit. 15, § 2402(c)(1)(A).

Even aside from the circumstances of the commitment offense, there was other evidence that reasonably demonstrated Petitioner was still a current threat to society if released. The psychological evaluation was not fully supportive of Petitioner's release. The report stated that one assessment concluded that Petitioner was within the moderately low range for risk of future violence in terms of clinical, insight, and risk management factors. (2007 Psychological Evaluation at 6.) Here, the recent psychological evaluation, when coupled with the circumstances of the commitment offense, constitutes some evidence in the record that could support the conclusion reached by the Board that Petitioner's release would unreasonably danger public safety. *See, e.g.*, *Rosas v. Nielsen*, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (circumstances of the commitment offense, along with the petitioner's psychiatric reports, constituted "some evidence" to support parole denial); *Mendoza v. Mendoza-Powers*, 2008 WL 835682, at *7 (C.D.

Cal. March 24, 2008) (circumstances of the commitment offense, coupled with the psychological evaluation which contained a low-moderate assessment for future violence on two scales provided "some evidence" to support parole denial).

The Board's concern that Petitioner made no effort to seek employment related to his marketable skills upon his release also supports the denial of parole. California Code of Regulations § 2402(d)(8) requires a prisoner to make realistic plans for release or develop marketable skills. Both are important factors in predicting a prisoner's successful transition to a law-abiding life after release from prison. Although Petitioner received certificates in Furniture and Dental, there is no evidence that he could obtain employment in the community on the basis of this certificate. Petitioner is less likely to be able to support a crime-free lifestyle if he does not have employment in a marketable field.

The Board also relied upon the fact that Petitioner had not attempted to participate in self-help or academic programs as "some evidence" of his current dangerousness. Self-help groups can help participants achieve understanding and remorse, which are factors indicating suitability for parole. *See* Cal. Code Regs. tit. 15, § 2402(d). Furthermore, participation in institutional activities would indicate an enhanced ability to act within the law. For these reasons, the finding that Petitioner's lack of participation in self-help programs was some evidence of current dangerousness was not unreasonable.

The information available to the Board reasonably could be viewed to indicate "that the implications regarding the prisoner's dangerousness that derive from his . . . commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." *Lawrence*, 44 Cal. 4th at 1214. Petitioner's lengthy incarceration plus his recently clean disciplinary history, vocational training, and past participation in several programming courses count in his favor. However, those circumstances do not provide so much evidence of rehabilitation as to compel a finding of suitability by the Board and the state court. Although he certainly is not going backwards, Petitioner's forward progress toward rehabilitation is somewhat limited, and could be so viewed by the Board. These circumstances also provided reliable, probative evidence of Petitioner's current dangerousness. Petitioner

therefore is not entitled to federal habeas relief.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED. Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: _12/27/2010_____          _____
                                          LUCY H. KOH
                                          United States District Judge